UNITED STATES DISTRICT COURT
DISTRICT OF WESTERN WISCONSIN

**Dana O. Riewestahl,**

Plaintiff,

v.

**Seneca Foods Corporation,**

Defendant.

Case No. 3:15-CV-805
Case Type: Employment/FMLA

**COMPLAINT
(JURY TRIAL DEMANDED)**

## INTRODUCTION

1. This Complaint describes illegal interference and retaliation perpetrated by Defendant Seneca Foods Corporation against Plaintiff Dana Riewestahl. Defendant retaliated against Mr. Riewestahl because Mr. Riewestahl exercised his right to federally protected medical leave pursuant to the FMLA. Mr. Riewestahl seeks damages and injunctive relief as available under the Family Medical Leave Act.

## JURISDICTION AND VENUE

2. Plaintiff bases his claims on the Family and Medical Leave Act ("FMLA), Title 29 U.S.C. § 2601 *et seq*. This Court, therefore, has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue in this Court is proper because the unlawful actions alleged herein occurred in this State and District, Defendant is doing business in this State and District, and Plaintiff resides in this State and District.

**PARTIES**

4. Plaintiff, Dana O. Riewestahl, is a resident and domiciliary of Cumberland, Wisconsin. Plaintiff was and is Defendant's "employee," as that term is defined by the FMLA.

5. Defendant Seneca Foods Corporation, is a foreign corporation with a principal office at 3736 South Main St., Marion NY 14505. Defendant's local registered agent and address is John Exner, 418 E. Conde St, Janesville, WI 53546. Defendant is doing business at 1055 Elm St. in Cumberland, WI 54829. Defendant was and is Plaintiff's "employer" as that term is defined by the FMLA.

**FACTUAL BACKGROUND**

6. Defendant hired Mr. Riewestahl on March 1, 1999.

7. From May 1999 to present, Mr. Riewestahl has worked as a full-time mechanic for Defendant—first as a "Class C" mechanic for approximately two years, then as "Class B" for approximately six years, then as "Class A" for approximately, and now as a "Specialist" for approximately the last four years.

8. Since 2001, for each year of his employment with Defendant, Mr. Riewestahl worked over 3,000 hours.

9. In 2013, Mr. Riewestahl was working as a Specialist Mechanic and was the Lead Mechanic in both the Prep and Pre-Clean Departments. As Lead Mechanic, Mr. Riewestahl was responsible for supervising the work of five or six employees, including organizing and directing their work, developing and training them, responding to their requests for assistance, and ensuring the overall successful operations of the departments.

10. Early on in the "pack season" in Summer 2013, Mr. Riewestahl began experiencing significant pain in both of his hands and wrists. In late summer, Mr. Riewestahl went to his primary care physician, Jayne L. Rieper, at Marshfield Clinic in Cumberland, WI.

11. Mr. Riewestahl's physician initially provided him with braces for both wrists and hands. After approximately one month of wearing the braces, Mr. Riewestahl returned to his physician because the braces were not alleviating his pain.

12. Mr. Riewestahl's physician then referred him to the Marshfield Clinic Rice Lake Center, where Mr. Riewestahl saw a specialist who conducted electrode testing and diagnosed him with carpal tunnel syndrome in both hands and wrists, and tendonitis in both thumbs.

13. In September 2013, the specialist then referred Mr. Riewestahl to an orthopedic surgeon at Marshfield Clinic Rice Lake Center, who informed Mr. Riewestahl that he needed surgery on both wrists.

14. Pursuant to Defendant's policies, and for the purposes of obtaining medical leave pursuant to the Family Medical Leave Act and short-term disability insurance, Mr. Riewestahl immediately notified Defendant and Defendant's insurance company, Unum Group, that he would be undergoing surgery in October 2013. Mr. Riewestahl and his doctors completed the requisite paperwork for requesting FMLA authorization and submitted it to Defendant and Defendant's insurance company several weeks in advance of the requested leave. Mr. Riewestahl also immediately informed his local supervisors and management of his pending medical leave.

15. Mr. Riewestahl's requested FMLA leave was approved within three days and the medical leave commenced on October 15, 2013, the day of Mr. Riewestahl's first surgery.

16. Approximately three weeks later, Mr. Riewestahl underwent another surgery.

17. Following his second surgery, Mr. Riewestahl remained on medical leave and underwent physical therapy.

18. In late December 2013, while Mr. Riewestahl was still on medical leave and recovering from his surgeries, a Defendant employee called Mr. Riewestahl and asked him if he resigned his employment. Mr. Riewestahl told him, "no" and inquired as to why the employee was asking. The Defendant employee then told Mr. Riewestahl that Defendant's management gathered all of Mr. Riewestahl's personal belongings that were stored near his toolbox and brought them to the personnel office, as is customary when an employee is terminated or resigns.

19. Worried that Defendant was preparing to terminate him, Mr. Riewestahl then asked his physical therapist if he was able to return to work even though one of his hands was not fully recovered. The physical therapist authorized the return on the condition that Mr. Riewestahl was comfortable that he would be able to do his job without causing significant injury to his hand. Because Mr. Riewestahl's position as Lead Mechanic did not require extensive use of his hands, he decided that he was able to return and notified Defendant that he would be returning to work.

20. Mr. Riewestahl returned to work on January 6, 2014.

21. Upon returning to work, Mr. Riewestahl discovered that he would be rebuilding the Model 30 cutters. Mr. Riewestahl was surprised at the assignment because it was not within his normal duties as Lead Mechanic and was much more physically intensive then his regular duties as Lead Mechanic.

22. Mr. Riewestahl approached Defendant's Plant Superintendent, Ric Hensel, about the situation. Mr. Hensel set a meeting between Mr. Riewestahl and the Defendant's Plant Manager, Bill Wagner.

23. Mr. Riewestahl met with Mr. Wagner within two or three days of returning to work, and he asked Mr. Wagner whether he had been removed from his position as Lead Mechanic. Mr. Wagner said that he had not been removed from the position and that Mr. Riewestahl was "overreacting."

24. Over the course of the next few months, Defendant continued to assign Mr. Riewestahl non-Lead responsibilities, segregating him in a quiet part of the plant. Mr. Riewestahl also discovered that maintenance employees were told to report to another supervisor instead of him.

25. At his annual performance evaluation in April 2014, Defendant downgraded Mr. Riewestahl's performance review because he took medical leave, resulting in a lesser compensation increase than he would have otherwise been entitled. Mr. Riewestahl objected to this and further explained how he felt he was being targeted for disparate treatment as a result his medical leave. Mr. Wagner told Mr. Riewestahl that because he had taken medical leave, Defendant had another employee fill in while he was gone and that Defendant was going to keep that other employee in a Lead position. Mr. Wagner

5

further explained that, moving forward, there would be two Lead Mechanics in the department, and that they were to share the job responsibilities.

26. Despite the representations made at his performance evaluation, as the pack season began, Defendant employees continued to report to the other Lead and Defendant management continued to assign Mr. Riewestahl non-Lead responsibilities and to an overnight Midnight–Noon shift, which he had never worked before. Despite repeatedly complaining about the new shift being difficult to work, Defendant kept him on that schedule and disciplined him for attendance issues related to the difficulties Mr. Riewestahl was having in adjusting to a pack schedule he had never worked in his fifteen years of employment. Mr. Riewestahl had never been disciplined for attendance issues in his previous years of working for Defendant.

27. At the conclusion of the pack season, Defendants told Mr. Riewestahl that they were assigning him to work on the cookers under the supervision of other Lead Mechanics. The job assigned to Mr. Riewestahl was outside of his fifteen years of experience in working for Defendant and was a clear demotion. In addition, the job was extremely physically intensive and in very hot working conditions. This confirmed Mr. Riewestahl's suspicions, held since he returned to work after his medical leave in January, that Defendant was targeting him for disparate treatment because he exercised his rights to medical leave. Mr. Riewestahl approached Mr. Wagner and Mr. Hensel and again objected to the demotion. Mr. Wagner responded by blaming Mr. Riewestahl for taking medical leave.

28. Despite being frustrated by the obvious retaliation, Mr. Riewestahl began working in the cookers and did his job for the next six months.

29. In April 2015, Mr. Riewestahl went to the doctor and reported that he had been experiencing pain in his midsection. His physician then required him to undergo testing and subsequently told Mr. Riewestahl that he would need to have his gallbladder removed. Mr. Riewestahl informed Defendant management of the diagnosis and necessary surgery and also told his physician that pack season was approaching at work and that he wanted to push off the surgery to October, if possible. The physician agreed to that plan.

30. Mr. Riewestahl worked in his demoted position in the cookers through most of the 2015 pack season despite experiencing significant and daily pain due to gallbladder attacks.

31. In early August 2015, Mr. Riewestahl scheduled his gallbladder removal surgery to take place on September 30, 2015. Mr. Riewestahl informed Defendant management of the planned surgery.

32. On August 17, 2015, Mr. Riewestahl wrote, on the cooker schedule in the office, that he would be off for surgery and recovery from September 30–October 15.

33. That same morning, Defendant manager Mr. Hensel approached Mr. Riewestahl in between the cooker buildings and began screaming at Mr. Riewestahl for planning to take time off for medical leave. Among other things, Mr. Hensel said, "I strongly recommend you rescheduling your surgery for a later date," and then stormed away.

34. Several people witnessed Mr. Hensel's outburst and another employee then approached Mr. Riewestahl and told him that Mr. Hensel also threatened him, saying, "[i]f you value your career with Seneca Foods, you will reschedule your [medical] surgery," and, "[i]t will impact your evaluation."

35. Mr. Riewestahl then rescheduled the surgery to take place October 7, as that was the date that worked for Mr. Riewestahl's surgeon.

36. Upon information and belief, in September 2015 Mr. Hensel was verbally disciplined for retaliating against Mr. Riewestahl and other employees for exercising their rights to medical leave. Nevertheless, Defendant left Mr. Riewestahl in his demoted position and has made any efforts to rectify the lost wages and job opportunities that have resulted from Defendant management's retaliatory actions.

37. Defendant's conduct toward Mr. Riewestahl of demoting him, materially altering the terms and conditions of his employment (including position, responsibilities, work environment, and more), downgrading him on his performance evaluation, giving him a lesser pay increase, threatening him, and more all result in Defendant taking adverse action against Mr. Riewestahl in retaliation of his use of federally-protected medical leave rights.

38. Mr. Riewestahl has suffered damages as a result of Defendant's conduct, including but not limited to lost wages and benefits, lost future wages, emotional pain and suffering, and has been required to incur attorneys' fees and other costs to protect his rights.

## COUNT 1:
### Entitlement, Retaliation, Discrimination, Interference
### Family and Medical Leave Act – Title 29 U.S.C. § 2601 *et seq*.

32. Mr. Riewestahl incorporates the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

33. The FMLA provides that it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any rights provided under the FMLA, including Plaintiff's right to take leave when medically necessary. The FMLA prohibits an employer from refusing to authorize leave under the FMLA or taking other actions to avoid responsibilities under the Act. The FMLA also prohibits employers from retaliating against an employee for opposing the employer's practices that are unlawful under the FMLA. Finally, the FMLA prohibits an employer from discriminating against an employee who exercises their rights under the FMLA by taking adverse action against the employee.

34. Defendant violated the FMLA when it repeatedly took adverse action against Mr. Riewestahl in retaliation for his October–December 2013 FMLA leave and when refused to authorize and/or interfered with Mr. Riewestahl's planned September 2015 medical leave.

35. Defendant acted intentionally, with malice, and/or with reckless indifference to the law when it unlawfully interfered, retaliated, and discriminated against Mr. Riewestahl for his use and/or attempted use of federally protected medical leave.

36. As a direct and proximate result of Defendant's illegal actions, Mr. Riewestahl has been injured, suffering economic harm, lost earnings and benefits, embarrassment, emotional distress, humiliation, and other damages.

37. Defendant, as a result of its illegal behavior and deliberate disregard for the rights and well being of Mr. Riewestahl, is liable to his for the above-mentioned injuries as well as punitive damages.

38. Total damages suffered by Mr. Riewestahl are in excess of $75,000.00, to be further determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court:

Enter a judgment in favor of Plaintiff and against Defendant, as follows:

1. An order granting Plaintiff judgment against Defendant;

2. An order granting Plaintiff compensatory damages in such amount as the jury may determine but not less than $75,000.00;

3. An order granting Plaintiff punitive damages and treble in such amount as the jury may determine not less than $75,000.00;

4. An order granting Plaintiff injunctive and declaratory relief against Defendant, whereby the Defendant is temporarily and permanently enjoined and restrained from any further harassment, discrimination, or retaliation of the Plaintiff;

5. An order for Defendant to pay Plaintiff's costs, interest and attorneys' fees, as authorized under the FMLA; and

6. An order for Defendant to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate.

*Plaintiff demands a jury trial.*

Dated: December 16, 2015                                    MADIA LAW LLC


/s/Joshua A. Newville
Joshua A. Newville
WI # 1092059 MN #395221
333 Washington Ave. N. #345
Minneapolis, Minnesota 55401
Ph: 612.349.2743
Fax: 612.235.3357
joshuanewville@madialaw.com
**ATTORNEY FOR PLAINTIFF**